# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

JOHNNY LEE WHITE, JR., M.D.,

    Plaintiff / Appellant,

v.                                                                                                    No. SA-18-cv-01287-JKP

STEVEN JEFFREY CYR,

    Defendant / Appellee.

## MEMORANDUM OPINION AND ORDER

Johnny Lee White, Jr., M.D., ("White") appeals the Order of the Bankruptcy Court granting Defendant Steven Jeffrey Cyr's ("Cyr") amended motion to dismiss and dismissing all of White's claims against Cyr.[1] Upon de novo review and applying the relevant standards, this Court finds White failed to plausibly allege any claim upon which relief could be granted. Accordingly, this Court affirms the decision of the Bankruptcy Court.

## I. INTRODUCTION

This case comes before the Court on appeal from the Bankruptcy Court's November 21, 2018 Order granting Cyr's amended motion to dismiss White's amended complaint. *See* Bankr. ECF Nos. 24, 27, 32.[2] In the adversary proceeding before the Bankruptcy Court, White sought a determination that a debt of Cyr and the Orthopaedic & Spine Institute, LLC ("OSI"), a limited liability company ("LLC") owned solely by Cyr, was nondischargeable because OSI was Cyr's

---

[1] For purposes of clarity, throughout this Opinion, the Court abbreviates the title of a cited motion or order rather than quoting the full title. The relevant documents from the bankruptcy proceeding are: "Order Granting Defendant's Amended 12(B)(6) [sic] Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 27)" (Bankr. ECF No. 32); "First Amended Complaint of Johnny Lee White, Jr. M.D. Objecting to Dischargeability of Certain Debts Pursuant to 11 U.S.C. § 523(a)(2)(4) and (6)" (Bankr. ECF No. 24); "Defendant's Amended Rule 12(b)(6) Motion To Dismiss Plaintiff's First Amended Complaint [Adv. Doc No. 23 & 24]" (Bankr. ECF No. 27); "Plaintiff's Response to Defendants' [sic] Amended Motion to Dismiss" (Bankr. ECF No. 31).

[2] Bankr. ECF No. refers to the electronic record in U.S. Bankruptcy Court Western District of Texas (San Antonio) Adversary Proceeding No. 18−05206−cag.

alter ego and Cyr engaged in conduct that prohibits discharge, to wit: fraud, embezzlement or larceny, and willful and malicious injury. *See generally* Bankr. ECF No. 24; 11 U.S.C. § 523(a)(2)(A), (4), and (6). The Bankruptcy Court granted Cyr's amended motion to dismiss, concluding White did not sufficiently plead Cyr's liability for OSI or OSI's CEO under alter ego or vicarious liability. Bankr. ECF No. 32 at 5-9.

On appeal, this Court addresses whether the Bankruptcy Court erred in granting the amended motion to dismiss. Specifically, White seeks review of the Bankruptcy Court's (1) implicit overruling of White's Fed. R. Civ. P. Rule 7(b) objections to Cyr's amended motion to dismiss; (2) failure to address the sufficiency of the fraud allegations against Cyr in his individual capacity; (3) conclusion that White failed to plausibly allege alter ego; (4) conclusion that White failed to plausibly allege agency and vicarious liability. White does not challenge the Bankruptcy Court's dismissal of his claims under § 523(a)(4) or (6).

## II. PROCEDURAL HISTORY

On July 22, 2015, counsel for White sent a letter to Cyr, care of OSI, demanding payment for professional services rendered from July 24, 2014, to June 11, 2015. ECF No. 4-3 at 72-75. On December 11, 2015, White commenced suit against Cyr, OSI, and OSI's CEO Linda D'Spain ("D'Spain") in the 438th District Court of Bexar County, Texas alleging breach of contract, quantum meruit, fraud, and theft of services. ECF No. 4-3 at 60-71. On January 20, 2018, Cyr filed a bankruptcy petition in the United States Bankruptcy Court for the Western District of Texas, staying the state court action. ECF No. 4-3 at 145. On April 16, 2018, White commenced adversary case 18-05206 in the Bankruptcy Court against OSI and Cyr, requesting a debt owed him by the defendants be deemed nondischargeable pursuant to alter ego and § 523(a)(2), (4), and (6). Bankr. ECF No. 1; ECF No. 4-3 at 4-17.

On May 17, 2018, Cyr filed a motion to dismiss White's case. Bankr. ECF No. 6. On July 3, 2018, Bankruptcy Judge Craig A. Gargotta dictated his findings of fact and conclusions of law on the record. Bankr. ECF No. 21 (transcript of proceedings). On July 9, 2018, Judge Gargotta entered his contemporaneous Order, granting Cyr's motion for more definite statement and denying the motion to dismiss without prejudice to refiling upon service of an amended complaint. Bankr. ECF No. 19. White's timely filed amended complaint was dismissed on November 21, 2018. Bankr. ECF No. 32.

On December 6, 2018, White filed his notice of appeal. Bankr. ECF No. 34. However, because Plaintiff included OSI as a party to the adversary proceeding, and the motion to dismiss was granted only as to Cyr, the adversary proceeding remained open as to OSI. ECF No. 4-3 at 295 n.1. Thus, this appeal was filed subject to an entry of default against OSI. ECF No. 7 at 8. On February 11, 2019, White dismissed his claims against OSI without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). Bankr. ECF No. 45. Briefing on this appeal was complete on March 27, 2019. ECF Nos. 7-9. The appeal was reassigned to the undersigned on August 12, 2019. ECF No. 10.

**III. JURISDICTION AND LEGAL STANDARDS**

A district court has appellate jurisdiction over the final judgments, orders, and decrees of a bankruptcy court. 28 U.S.C. § 158(a)(1). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 587 (2020) (citation omitted). *See also In re Delta Services Industries*, 782 F.2d 1267, 1271 (5th Cir. 1986) (An order of a bankruptcy court is final when it resolves a discrete unit in the larger case, conclusively determining "substantive rights."). An order granting a motion to dismiss constitutes a final order over which this Court

has appellate jurisdiction. *See In re Greene Cty. Hosp.*, 835 F.2d 589 (5th Cir. 1988) (commenting that "[d]ismissal of a complaint obviously ends a dispute" for the purposes of appeal from a bankruptcy court to a district court).

"A district court reviews the final judgments and orders of a bankruptcy court as an appellate court, applying the standards of review generally applied in federal appeals courts." *Harvey Gulf Int'l Marine, Inc. v. Bennu Oil & Gas, LLC*, 559 B.R. 152, 154 (S.D. Tex. 2016). The bankruptcy court's factual findings are reviewed for clear error, legal determinations and mixed questions of fact and law are reviewed de novo, and its exercise of discretion for abuse thereof. *Furlough v. Cage (In re Technicool Sys.)*, 896 F.3d 382, 385 (5th Cir. 2018) (citations omitted).

A bankruptcy court's decision on a Rule 12(b)(6) motion to dismiss is subject to de novo review. *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). When presented with a motion to dismiss under Rule 12(b)(6), a court generally "must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face[.]" *United States v. Bollinger Shipyards Inc.*, 775 F.3d 255, 257 (5th Cir. 2014) (internal citations and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" a defendant has acted unlawfully. *Id*. Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id*. at 679. Where a plaintiff's factual allegations do not provide enough information to "nudge a claim across the

line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

In assessing a motion to dismiss under Rule 12(b)(6), the court's review is generally limited to the complaint and any documents attached to the motion to dismiss referred to in the complaint and central to the plaintiff's claims. *Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). When reviewing the complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation marks omitted) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

## IV. DISCUSSION

### A. White's Rule 7(b) Objections

In his response to Cyr's amended motion to dismiss, White argues the motion failed to meet Fed. R. Civ. P. Rule 7(b)(1)(B)'s particularity requirement. ECF No. 4-3 at 228-230. White's objection contends that the amended motion to dismiss (1) merely regurgitated the "grounds, arguments and authorities set forth in his original Motion to Dismiss" and (2) argued that White failed to detail a relationship that White never alleged existed. *Id.* at 228. White further asserts that incorporation by reference of Cyr's prior motion to dismiss engendered "real uncertainty as to what claim is now being attacked and what element of each claim the Defendant claims is not pled sufficiently in the Amended Complaint." *Id.* at 228-29. White's objection continues by pointing out deficiencies in Cyr's arguments with respect to White's pleading of fraud, fiduciary relationship, and alter ego. *Id.* 229-30.

Rule 7(b) requires any request for a court order be made by motion. "The motion must: (A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought." Fed. R. Civ. P. 7(b)(1). "The particularity requirement gives notice to the court and the opposing party, providing the opposing party 'a meaningful opportunity to respond and the court with enough information to process the motion correctly.'" *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 983 (8th Cir. 2008) (citation omitted).

Cyr's amended motion to dismiss is not a model of clarity. White is correct to the extent that the motion requires the reader to pick through the detritus to find specific grounds for dismissal. Nonetheless, Cyr states that he "seeks dismissal of Plaintiff's Amended Complaint for failure to comply with the Court's Oral Ruling of July 3, 2018, and for failure to show the Court how, or why there was a fiduciary relationship between Cyr and White, what moral duty existed, and why and how that duty was breached." ECF No. 4-3 at 213. Cyr next points to specific lines in the transcript of the Bankruptcy Court's oral ruling where Judge Gargotta noted deficiencies in White's allegations, which included pleading any fiduciary relationship between Cyr and White; the basis for claims alleged under § 523(a)(2), (4), and (6) generally; larceny ("if larceny is still involved in this case or ever was involved in this case"); and any willful or malicious behavior by Cyr. *Id.* at 214-15. Cyr concludes his arguments with a prayer the Court dismiss White's amended complaint for failure to sufficiently plead claims under § 523(a)(2)(A), (4), and (6), and for failure to show any willful or malicious behavior by Cyr. Having presented the grounds for his motion three times, this Court cannot find that Cyr failed so catastrophically to state with particularity the grounds for dismissal as to deprive White of a meaningful opportunity to respond. Accordingly, the Bankruptcy Court did not err in "implicitly overruling" White's Rule 7(b) objection.

**B. Fraud Allegations**

"The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an honest but unfortunate debtor." *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998) (citation omitted). Section 523(a)(2)(A) provides that an individual debtor may not be discharged from a debt that was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." White claims Cyr fraudulently induced him to commence providing medical services because Cyr knew or should have known that OSI would not be able to pay the fifty-percent share agreed to by the parties. Bankr. ECF No. 24 ¶ 54.

> To state a claim under § 523(a)(2)(A), the creditor must plausibly allege:
>
> (1) that the debtor made a representation; (2) that the debtor knew the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result of its reliance.

*Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005) (citing *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001)). *See also Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 513 B.R. 510, 522 (S.D. Tex. 2014) (To state a claim under § 523(a)(2)(A), a creditor must allege "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury.") (citing *DeSantis v. Wackenhut Corp.*, 793 S.W. 2d 670, 688 (Tex. 1990)). *Cf. Saenz v. Gomez (In re Saenz)*, 899 F.3d 384, 394 (5th Cir. 2018) (noting that "the term 'actual fraud' in section 523(a)(2)(A) encompasses forms of fraud that can be effected without false representation").

White argues he sufficiently pled fraud pursuant to § 523(a)(2)(A) because he alleged that in July 2014, Cyr represented that OSI was a profitable and lucrative practice, which would generate sufficient revenues to enable it to meet the obligations of the compensation structure negotiated with White; that OSI already had in place an internal physician management system with computerized billing; that OSI had relationships and billing protocols with third-party payors that would enable them to timely and efficiently account for, bill, and collect for services to be provided by White; that reimbursement rates from third party payor's were consistent with those in the medical community at large; and that in the event White became affiliated with OSI, that OSI and its staff would timely apply for and facilitate the credentialing of White to ensure prompt payment by third-party payors. Bankr. ECF No. 24 ¶ 13.

White adequately alleges that he relied on these representations by demonstrating that shortly after Cyr and OSI made the alleged representations, White commenced treating OSI patients and continued to do so through June 2015. Importantly, White's amended complaint fails to demonstrate that these representations were made with the intent and purpose to deceive him, particularly because White's pleadings show OSI's endeavors to pay him and obtain credentials with third party payors on his behalf. *Id.* ¶¶ 25-33, 36, 38, 39. White's allegations with respect to any internal physician management system, computerized billing, OSI's relationships and billing protocols with third-party payors, and reimbursement rates do not provide enough information for the Court to infer that Cyr knew these representations were false when he made them. Accordingly, the allegations in White's amended complaint are insufficient to state a claim for fraud.

White's amended complaint purports to allege that Cyr may also be held liable for his omission of information regarding any financial difficulties of OSI or disputes with physicians,

hospitals, or vendors. *Id*. ¶¶ 14, 55-58. White's allegations do not demonstrate that these alleged omissions were intentional and material; that Cyr had a duty to disclose the alleged omissions; that Cyr knew White was ignorant of the omissions and would not have an opportunity to discover the truth; and that White relied on Cyr's omission and was harmed as a result of acting without that knowledge. *Ward Family Found. v. Arnette (In re Arnette)*, 454 B.R. 663, 689 (Bankr. N.D. Tex. 2011) (citing *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC,* 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] Oct. 7, 2010, no pet.)). Failure to allege the basis of Cyr's duty to disclose is particularly relevant given White describes an arms-length transaction between two seasoned physicians. *See Smith v. BCE Inc.*, Civil Action No. SA-04-CA-0303-XR, 2005 U.S. Dist. LEXIS 35238, at *33 (W.D. Tex. Nov. 3, 2005) (at summary judgment, finding there was no duty on the debtor to disclose because the plaintiff was a sophisticated businessman with an extensive background in the industry in which he was entering into an arm's length business transaction; there was no evidence the plaintiff requested and was denied access to any information; and that expanding the duty to disclose would essentially replace any obligation to conduct due diligence). Because White's amended complaint only alludes to information Cyr may have omitted, White's allegations of fraud by omission fail to state a claim upon which relief could be granted.

## C. Alter Ego

Orthopaedic & Spine Institute, LLC (OSI) is a Texas limited liability company. "Except as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court." Tex. Bus. Orgs. Code § 101.114. "Due to the limited liability that corporations and LLCs offer to their owners, a

plaintiff seeking to impose individual liability on an owner must 'pierce the corporate veil.'" *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013) (applying Texas law to corporate veil analysis). "Under Texas law, 'there are three broad categories in which a court may pierce the corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud.'" *Rimade Ltd. v. Hubbard Ent., Inc.*, 388 F.3d 138, 143 (5th Cir. 2004) (quoting *W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994)).

A plaintiff must allege more than a "subjective perception of unfairness." *SSP Partners v. Gladstrong Invs. Corp.*, 275 S.W.3d 444, 455 (Tex. 2008). Rather, an abuse such as "fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like" "is necessary before disregarding the existence of a corporation as a separate entity." *Id*. Consequently, before imposing liability under an alter-ego theory, a court must find (1) that the entity "is the alter ego of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose, that is, to perpetrate an actual fraud on the plaintiff for the defendant's direct personal benefit." *U.S. KingKing, LLC v. Precision Energy Servs.*, 555 S.W.3d 200, 213-14 (Tex. App.—Houston [1st Dist.] June 5, 2018, no pet.) (citations omitted).

A plaintiff plausibly alleges an LLC is the alter ego of an individual by demonstrating "such unity" between the LLC and the individual "that the separateness of the [LLC] has ceased and holding only the [LLC] liable would result in an injustice." *Gibraltar Sav. v. LDBrinkman Corp.,* 860 F.2d 1275, 1288 (5th Cir. 1988); *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990). Such unity may be demonstrated by alleging facts to show "the degree to which corporate formalities have been followed and corporate and individual property have been kept

10

separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Id.* (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 271-72 (Tex. 1986) *superseded on other grounds by* former Bus. Corp. Act art. 2.21, re-codified at Tex. Bus. Orgs. Code § 21.223) (citations omitted). Facts that support a plausibly alleged claim of alter ego may include:

> (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his or her personal use; (4) inadequate capitalization; (5) whether the corporation has been used for personal purposes; and (6) other failure to keep corporate and personal assets separate.

*Beane v. Gregg (In re Gregg)*, Nos. 10-41181, 10-4162, 2012 Bankr. LEXIS 4537, at *29-30 (Bankr. E.D. Tex. Sep. 28, 2012) (citing *Mancorp*, 802 S.W.2d at 228; *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15, 23 (Tex. App.—Texarkana [6th Dist.] Aug. 7, 2012, no pet.)).

Accepting the allegations as true and construing them in the light most favorable to him, White's amended complaint alleges in 2014, Cyr and White were physicians providing services at Victory Landmark Hospital in San Antonio. Bankr. ECF No. 24 ¶¶ 9-10. Cyr provided services through his LLC, OSI. *Id*. White provided services through his private practice, Disability and Pain Consultants of Texas, P.A. *Id*. Cyr and White met in June 2014. *Id*. ¶ 10. In a July 2014 meeting attended by Cyr, D'Spain, and White, Cyr and D'Spain proposed an affiliation between White and OSI in which White would provide medical services and OSI would provide various administrative services including billing. *Id*. ¶¶ 11-12. During the meeting, White verbally proposed a "50/50 gross collections of patient billings arrangement" and Cyr agreed. *Id*. ¶ 15. White did not receive the fifty-percent share of billings as promised and later learned that "Cyr utilized the profits from his practice in OSI for his personal gain and lavish and extravagant lifestyle." *Id*. ¶ 47.

11

White's allegation that OSI funds were used for Cyr's personal purposes is conclusory. Absent factual allegations in support of the conclusion that Cyr used OSI profits to support his lifestyle or factual allegations that show corporate formalities were not followed, that corporate and private property, funds, or assets were comingled, or that Cyr otherwise abused the corporate form, White's amended complaint fails to demonstrate "such unity" between OSI and Cyr "that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *KingKing*, 555 S.W.3d at 213 (citations omitted).

**D. Agency and Vicarious Liability**

White contends Cyr's original motion to dismiss did not challenge the agency or vicarious liability allegations made in his complaint, that in its oral ruling the Bankruptcy Court did not "address or even mention issues of agency or vicarious liability," and that in his amended motion to dismiss, Cyr again did not make any reference to agency or vicarious liability. ECF No. 7 at 10. Thus, White argues, the Bankruptcy Court erred by granting relief that was not requested. *Id.* at 14, 17. Contrary to White's contentions, neither White's state court petition nor his original federal complaint make any mention of agency or vicarious liability and the factual recitations therein do not plainly or, as White characterizes his pleading, "emphatically" allege that D'Spain was Cyr's agent. *Id.* at 25. With respect to agency and vicarious liability, White's amended complaint states: "Plaintiff would show that the acts, representations and omissions of Linda D'Spain as CEO of OSI were made in her capacity as an agent and representative of Cyr and OSI such that under law, Cyr and the Defendant OSI are vicariously liable for her fraudulent representations, reaffirmations and omissions as set forth hereinabove with particularity." Bankr. ECF No. 24 ¶ 48.

If D'Spain acted as Cyr's agent and committed fraud in incurring debt to White, then Cyr's debt to White "is not dischargeable under § 523(a)(2)(A)." *Tummel & Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 319 (5th Cir. 2005). "[I]f a debt arises from fraud and the debtor is liable for that debt under state partnership law, the debt is nondischargeable under § 523(a)(2)(A)." *Deodati v. M.M. Winkler & Assocs. (In re M.M. Winkler & Assocs.)*, 239 F.3d 746, 751 (5th Cir. 2001). *Cf. Veritex Cmty. Bank v. Osborne (In re Osborne)*, 2020 U.S. App. LEXIS 7408, at *19 (5th Cir. 2020) (noting the Fifth Circuit has held that an agent's fraud may be imputed to the debtor under § 523(a)(2)(A) and applying that holding to § 523(a)(2)(B)). "An agency relationship based on actual authority arises when 'the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" *In re Osborne*, 2020 U.S. App. LEXIS 7408, at *21 (quoting Restatement (Third) Of Agency § 2.01 (2006)). "An agency relationship based on apparent authority is formed 'when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'" *Id.* (quoting Restatement (Third) Of Agency § 2.03 (2006)).

The Bankruptcy Court concluded that White did not plausibly allege facts to demonstrate that one could reasonably believe that D'Spain was Cyr's agent. This Court agrees. White alleges D'Spain was the CEO of OSI: "Plaintiff was invited by Defendant Cyr to meet the following day with Defendant Cyr and Defendant OSI's CEO, Linda D'Spain." Bankr. ECF No. 24 ¶ 11. Following that meeting, the majority of communications about White's work for OSI, including credentialing through OSI and payment to him by OSI, were between White and D'Spain. White's allegations show from August 2014 through December 2014, he communicated exclusively with D'Spain. *Id.* ¶¶ 19-29. "However, when a January payment was not timely

13

forthcoming, on January 6, 2015[,] Dr. White wrote via text to D'Spain and Defendant Cyr," to which only D'Spain replied. *Id*. ¶¶ 30-31. White did not communicate again with Cyr until March 6, 2015, when, "[f]rustrated with the ongoing process, . . . Plaintiff sent Defendant Cyr a text message . . . advising him of his concerns and requesting a meeting," to which Cyr replied, advising that a meeting could be set when he returned from vacation. *Id*. ¶ 37. White's pleading does not allege any follow-on meeting with Cyr. Rather, White continued to communicate exclusively with D'Spain about his ongoing issues and concerns with OSI. *Id*. ¶¶ 37-41. These communications included the text message purporting to tender his resignation on June 12, 2015: "when Dr. White received no funds, he indicated that enough was enough." *Id*. ¶ 42. That same day, D'Spain responded via text message "to Plaintiff and Defendant Cyr" "that all of Plaintiff's clinics had been cancelled and that she would send a report of what was owed Plaintiff and pay the remaining balance as timely as possible." *Id*. ¶ 43. White further alleges Cyr sent him a message the same day advising him that payment to White would be a priority and admitting both financial difficulties and that Cyr never believed the 50/50 split was feasible. *Id*. ¶ 44. Accordingly, the Bankruptcy Court did not err in concluding that "Plaintiff could have only reasonably believed that D'Spain was acting on behalf of OSI, not Cyr in his individual capacity." Bankr. ECF No. 32 at 9.

## V. CONCLUSION

Because White failed to plausibly allege any claim upon which relief could be granted, this Court concludes the Bankruptcy Court did not err in granting Cyr's amended motion to dismiss. Accordingly, it is ORDERED the United States Bankruptcy Court's Order granting the amended motion to dismiss entered on November 21, 2018 (Bankr. ECF No. 32), is AFFIRMED.

A final judgment in accordance with this Memorandum Opinion and Order is issued contemporaneously herewith.

SIGNED this 2nd day of April 2020.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE